81 So.2d 625 (1955)
Samuel A. MOONEY
v.
AMERICAN AUTOMOBILE INSURANCE CO.
No. 4050.
Court of Appeal of Louisiana, First Circuit.
June 30, 1955.
Huckabay, Seale, Kelton & Hayes, Baton Rouge, for appellant.
Burton & Roberts, Baton Rouge, for appellee.
ELLIS, Judge.
This suit is the result of a collision between a school bus which was insured by the defendant herein, and an automobile being operated and belonging to the plaintiff, which occurred on December 4, 1953 at about 10:15 P.M. on U. S. Highway 190 on the Mississippi River Bridge. Both vehicles were traveling west at the time.
The defendant filed an exception of no right or cause of action based on the contention that plaintiff was guilty of contributory negligence as a matter of law when he alleged in his petition that he was passing the school bus to the right. The exceptions were duly argued and with written reasons assigned were overruled and are not being reurged on appeal.
Answer was filed and the case duly tried and judgment rendered in favor of the plaintiff as prayed for, from which judgment the defendant has appealed.
The facts are well established and not seriously disputed, that on the night in question a school bus was being operated *626 on a private errand and was traveling west on Highway 190 near the eastern approach of the Mississippi River Bridge in East Baton Rouge Parish, Louisiana. The highway at the scene of the accident runs in a generally easterly and westerly direction and has four paved lanes with the two lanes for eastbound traffic being separated from the two lanes for westbound traffic by a neutral ground. Just prior to the collision in question the school bus and plaintiff's automobile were traveling in a westerly direction on the highway with the bus being driven in the left or south lane and the Mooney automobile traveling in the right or north lane and to the rear of the bus. It is shown that the bus was traveling approximately 30 miles per hour and that there were other cars which were traveling in front of the Mooney automobile in the right or north lane which passed the bus to the right. It is further definitely established that just prior to the time that Mooney attempted to pass the bus on its right by using the same lane in which he was traveling, another motor vehicle had just passed the bus in this manner. It is also established that the bus driver was aware of Mooney's presence to his rear, but stated that he intended when he got up the incline on the level part of the bridge to pull into the right-hand lane which was the lane Mooney was traveling in. The bus driver admitted that he was edging over to the right at the time of the collision. It appears that Mooney started to pass the bus on its right and that at the same time the bus driver edged over and in effect, jammed or squeezed Mooney's vehicle so that the two vehicles came together, Mooney hitting the railing of the bridge and the back end of the bus.
The trial judge found that the bus had crossed over from the left to the right lane squeezing plaintiff's car into the side railing of the bridge approach, and from the evidence he is correct in this finding.
Counsel for the defendant vigorously argues that it was negligence per se under the law for Mooney to pass to the right of the school bus, and that he was endeavoring to make this maneuver at night without blinking his lights, sounding his horn or giving any other warning of his intention to pass.
Counsel for defendant relies upon LSA-R.S. 32:233 (A) which reads as follows:
"§ 233. Overtaking and passing vehicles
"A. The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle.
"B. The driver of an overtaking vehicle shall give audible and sufficient warning of his intention before overtaking, passing or attempting to pass a vehicle proceeding in the same direction."
In addition to the above law, counsel relies upon the cases cited by the Orleans Court of Appeal, all of which originated in the City of New Orleans. These cases are not apposite for there the City has specific ordinances governing four-lane or one-way streets.
Able counsel for plaintiff has advanced very sound and logical reasons why section 233 could not be applicable to fourand eight-lane highways. He argued, and the trial judge agreed with him, that:
"That R.S. 32:233(A) does not control the present situation is apparent when all the sub-paragraphs of that section are considered together, which is a fundamental principle when interpreting statutes. Considering the entire section, it is clear that it was designed to apply to two-lane highways when a passing car might be confronted with oncoming traffic. Why else would sub-paragraph (C) place the burden of seeing that the left lane was free from oncoming traffic on the passing car if the statute concerned four-lane highways or, in effect, one-way streets and highways? Why would sub-paragraph (D) prohibit passing on hills and curves? We submit that the section of Highway Regulatory *627 Act pertaining to overtaking and passing, LSA-R.S. 32:233, is as clearly inapplicable to four-lane highways and one-way streets as Section 231, the section requiring vehicles to be driven on the right side, which specifically exempts `one-way streets or roads'. In support of our contention that section 233(A) does not apply to four-lane highways and one-way streets, we refer the Court to the following quotation from 60 C.J.S. [Motor Vehicles, §] 326, at page 762:
"`Where there are distinct lines of traffic proceeding in the same direction, a regulation requiring vehicles to pass to the left of other vehicles proceeding in the same direction applies only to a vehicle which is passing another in its own line, and not to a vehicle in one line which is traveling on the right of another line. On wide boulevards or avenues on which it is customary for cars traveling in the same direction to travel abreast it is not incumbent on a driver, who is traveling well to the right of another car and who has ample room to pass on the right, to turn out to the left in order to pass it, * * *.' (Emphasis supplied.)
"If section 233(A) alone governs, what about Third Street, Fourth Street, Lafayette Street, Nicholson Drive, Florida Extension, Scenic Highway and the eight-lane approach to New Orleans? When traffic in the left lane travels slowly or is slowed down by someone making a left turn and such, should the traffic in the right lane or lanes slow down and maybe even stop? According to appellant's position that would be the only course. The passing on the left rule just can't and doesn't apply to roads which have more than one lane for traffic going in the same direction.
"With the Court's permission, we would like to quote at length from the reasoning of the trial judge on this issue:
"`From the allegations of plaintiff's petition it seems obvious that the highway described therein actually consists of two one-way roads, each with two traffic lanes. If this be true, and it is true to the writer's personal knowledge, such fact must be borne in mind in the consideration of these exceptions.
"`The Highway Regulatory Act recognizes one-way roads (L.S.A. 32:231) and one-way streets (L.S.A. 32:247), but does not legislate with reference to them. L.S.A. 32:231 reads:
"`"Upon all highways, including intersections, of sufficient width, except one-way streets or roads, the driver of a vehicle shall drive it upon the right half of the highway and shall drive a slow moving vehicle as closely as possible to the right hand edge or curb of the highway unless it is impracticable to travel on such side of the highway, and except when overtaking and passing another vehicle, subject to the limitations applicable in overtaking and passing set forth hereafter."
"`By its own terms this section has no application to one-way roads, and by inference neither do "the limitations applicable in overtaking and passing set forth hereafter" have any such application.
"`The provisions dealing with overtaking and passing are found in L.S.A. 32:233, Subsection A of which is quoted hereinabove. This section contains eight subsections lettered from A through H. Subsection G deals with overtaking and passing interurbans, street cars and trains, and subsection H deals with meeting or overtaking school buses, hence neither requires consideration here. The other six subsections obviously apply to two-way roads. This is particularly shown in Subsection C, which refers to "oncoming traffic"; Subsection D, which refers to obstructed view; and Subsection F, which refers back to Subsection C. None of these provisions would be required or logical for traffic on a one-way road.
"`It is my opinion that there is no statutory provision in this state regulating traffic on one-way roads except *628 such as may be drawn by inference from L.S.A. 32:231, hereinabove quoted. From a reading of that section it appears that on a one-way road a vehicle may be driven on either side or in either traffic lane the driver may choose, whether the vehicle be slow moving, traveling at much less than the maximum legal speed, or fast moving, traveling at the maximum legal speed. Nor does it appear there is any jurisprudence on this point. * * *
"`It is my opinion that defendant's bus had a perfect right to travel in the left traffic lane and at a speed approximately one-half the admitted legal maximum, and that plaintiff's car had a perfect right to travel in the right traffic lane and at a speed not exceeding the legal maximum. It is further my opinion that defendant's bus had a perfect right to change over from the left to the right traffic lane, but that it was incumbent on the driver to see that such change over could be made safely and without any interference with traffic in the right lane. If he was negligent in this respect such negligence was the proximate cause of any resulting damage, and it is so alleged in plaintiff's petition.'"
While possibly the problem presented addresses itself to the Legislature so that definite rules or laws may be made to regulate traffic on multiple-laned highways which have been constructed to relieve congestion and lessening the dangers of travel, to strictly apply the provisions of LSA-R.S. 32:233(A) to four and eight lane highways which have been constructed in the State since the passage of the original acts which were embodied in the Revised Statutes would, in effect be reducing the usefulness of the multiple-laned highways to the old two-lane highway.
It was never the intention of the lawmakers that LSA-R.S. 32:233(A) should apply to multiple-laned highways. In the present case, even if it should be applied and the plaintiff's passing on the right should be construed as negligence, it was still not the proximate cause of the accident. Under the facts, the school bus was holding the left lane and traffic was passing it to the right, and the driver knew that the plaintiff's automobile was to his rear. He therefore had no legal right without warning to pull into the right lane, and such action on his part was a proximate cause of this accident.
Counsel for defendant argues that plaintiff should have sounded his horn as a warning. If the horn was to be blown so that the bus driver would know that plaintiff was behind him and was going to pass, it was not necessary under the facts in this case as the bus driver admittedly knew that plaintiff was to his rear and that cars had been passing him on the right. Furthermore, the main necessity for blowing the horn is so that the car in front will give way, and in this case plaintiff had a safe way to pass or would have had, if the bus driver had not, without warning, steered to his right.
The judgment of the District Court should be affirmed.